IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

YOLANDA TART,

          **Plaintiff,**

v.

FIVE BELOW, LLC.

          **Defendant.**

Case No. 22-CV-176-JFH-MTS

## OPINION AND ORDER

Plaintiff Yolanda Tart ("Plaintiff"), appearing pro se, brought this action for wrongful discrimination, harassment, and negligent infliction of emotional distress in a place of public accommodation against Defendant, Five Below, LLC ("Defendant").[1] Defendant filed a Motion to Dismiss [Dkt. No. 15] ("Motion"), arguing that Plaintiff's Amended Complaint [Dkt. No. 12] fails to state a claim and is subject to dismissal pursuant to Rule 12 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court agrees. Defendant's Motion to Dismiss [Dkt. No. 15] is GRANTED, and Plaintiff's Amended Complaint [Dkt. No. 12] is DISMISSED without prejudice.

## BACKGROUND

The facts, viewed in the light most favorable to Plaintiff, are as follows: Defendant operates at least one store[2] in Tulsa, Oklahoma. Dkt. No. 12 at ¶¶ 2, 9. Plaintiff, who is an African American woman, is one of Defendant's regular customers. *Id.* at ¶¶ 9, 14. On March 30, 2022, Plaintiff visited a store operated by Defendant; she was the only African American in

---

[1] Defendant's correct legal name is Five Below, Inc. *See* Dkt. No. 19.

[2] The Amended Complaint does not identify the nature of the store operated by Defendant.

the store at the time. *Id.* at ¶¶ 10, 14. At some point during that visit, a store manager (the "Manager") approached Plaintiff and asked if he could assist her with the self-checkout register. *Id.* at ¶¶ 9. Plaintiff declined. *Id.* at ¶ 12. The Manager nevertheless remained at Plaintiff's side, while staring at Plaintiff in a manner that made her uncomfortable. *Id.* When Plaintiff asked the Manager if he was under the influence of any drugs, the manager "came and stood directly besides [Plaintiff] at the register," and continued to stare at her. *Id.* at ¶¶ 12-13. Plaintiff was uncomfortable with the situation, and asked the Manager to leave, again informing him that she did not need any assistance. *Id.* at ¶ 13. The Manager asked Plaintiff "what her problem was 'bro,'" and Plaintiff responded by demanding that the Manager leave the area. *Id.* at ¶ 14.

The Manager did not leave. Instead, he remained at Plaintiff's side, repeatedly slamming a toy Slinky in his hands in an aggressive manner. *Id.* at ¶ 14-15. Plaintiff, who had begun to feel unsafe, took out her phone and began to record the encounter. *Id.* Other customers observing the encounter also took out their phones recorded the interaction. *Id.* at ¶ 16. Plaintiff asked to speak to a different manager; the Manager responded that he was the only manager on the premises. *Id.* at ¶ 17. After criticizing the Manager's management skills, Plaintiff asked to speak to the general manager (the "GM"). *Id.* at ¶ 18. The Manager spoke with the GM on his personal phone but did not provide Plaintiff with either an opportunity to speak to the GM or the GM's contact information. *Id.* The conversation between the GM and the Manager did not lead to any discernable change in the Manager's behavior. *Id.* at ¶¶ 18-19.

Plaintiff alleges that, at some point, she was "completely over" the Manager's behavior, which she believed to be discriminatory. *Id.* at ¶ 19. Plaintiff does not allege that the Manager's behavior prevented her from completing her intended purchase at Defendant's store. *See*

2

*generally*, *id*. at ¶¶ 1-20. She does, however, note that the Manager did not treat any white customers the way that he treated Plaintiff, and that the Manager did not even greet the other customers that came into the store during the incident. *Id.* at ¶ 20. Plaintiff contends that the Manager's conduct constitutes wrongful discrimination, harassment, and negligent infliction of emotional distress. *Id.* at ¶¶ 21-27. She seeks relief in the form compensatory damages, punitive damages, and prospective relief. *Id.* at ¶¶ 25-27; *id.* at ¶¶ C-H (Prayer for Relief).

## STANDARD OF REVIEW

There are at least two sides to every story, but a court considering a motion to dismiss generally concerns itself with only the story alleged. When reviewing Defendant's Motion, this Court will review the operative pleading to determine whether it consists of factual averments that would support a claim for relief, as opposed to mere labels, conclusions, and formulaic recitations of the elements of a particular cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's well-pleaded factual allegations will be accepted as true, even if they are doubtful in fact, and the Court will construe Plaintiff's allegations in the light that is most favorable to her. *Id.* at 555-56. So long as the allegations, if true, would state a plausible claim for relief and "raise a right to relief above the speculative level," dismissal is not warranted. *Id.*

## ANALYSIS

Defendant urges the Court to dismiss this action. It contends that, even if the facts are as Plaintiff alleges, Plaintiff cannot state a claim for relief under 42 U.S.C. § 2000a because Defendant's store is not a place of "public accommodation" for purposes of that statute. Dkt. No. 15 at 3. Defendant further argues that there is no independent right of action for negligent infliction of emotional distress under Oklahoma law and that, consequently, Plaintiff cannot prevail on her state-law tort claim under any set of facts. *Id.* at 4-5.

The Court agrees that binding precedent precludes Plaintiff from proceeding under 42 U.S.C. § 2000a, which ensures that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations *of any place of public accommodation, as defined in this section*, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a) (emphasis added). A "place of public accommodation," for purposes of § 2000a, specifically includes restaurants, cafeterias, soda fountains, facilities principally engaged in "selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station," so long as the operation affects commerce or engages in discrimination or segregation in a manner that is supported by State action. *Id.* at § 2000a(b). Retail establishments are not encompassed by the definition of "place of public accommodation" unless they incorporate a facility that sells food for on-site consumption. *Id.* at § 2000a(b)(2).

In light of both the limited scope of the statutory language and the Congressional intent behind § 2000a,[3] federal courts have long held that general retail establishments are not "places of public accommodation," and have dismissed actions seeking relief against such establishments pursuant to § 2000a. *E.g.*, *White v. United States*, No. 22-CV-01248-CNS-NRN, 2023 WL 4136666, at *3 (D. Colo. June 22, 2023) (recognizing that the "plain language of the statute and its legislative history support a finding that retail establishments such as those providing shipping services, regardless of whether run by the government or a private entity," are not within the ambit

---

[3] The Court of Appeals for the Tenth Circuit has long recognized that Congress intended § 2000a to apply only to certain facilities. *See Cuevas v. Sdrales*, 344 F.2d 1019, 1021 (10th Cir. 1965) (concluding that "Congress did not intend" § 2000a to "include all establishments to which its constitutional powers might extend" but instead intended that provision to apply only to "aggravated sources of discrimination," with the belief that legislation aimed at the more problematic sources would have an impact on other sources as well).

4

of § 2000a); *Priddy v. Shopko Corp.*, 918 F. Supp. 358, 359 (D. Utah 1995) (dismissing cause of action brought under § 2000a where the plaintiff did not allege that the defendant's facility was anything other than a general retail establishment).   In view of this authority, Plaintiff's Amended Complaint must be dismissed, as it does not set forth facts that, if true, would permit a fact-finder to conclude that Defendant's store is a place of public accommodation covered by § 2000a.   *See*, *e.g., Chandler v. Pay-n-Save, Inc.*, No. CV 21-1228 KG/SCY, 2022 WL 4016807, at *5 (D.N.M. Sept. 2, 2022) (dismissing § 2000a claim where the plaintiff had failed to allege any facts suggesting the defendant served "food for on-premises consumption").

Plaintiff's inability to obtain relief under § 2000a does not end the matter before the Court. Plaintiff appears pro se, and this Court is therefore required to construe her claims liberally.   *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).   "If the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so," even if Plaintiff fails to cite the proper authority or confuses the applicable legal theories.   *Id.*   For this reason, the Court will consider whether Plaintiff has stated a claim under 42 U.S.C. § 1981.

Section 1981, unlike § 2000(a), is not limited to conduct that occurs at places of public accommodation.   Instead, that provision broadly grants all "persons within the jurisdiction of the United States" identical rights in the making and enforcement of contracts.   42 U.S.C. § 1981. To state a claim for discrimination under § 1981, Plaintiff must establish that (1) she is a member of a protected class, (2) Defendant discriminated against her on the basis of race, and (3) the discrimination interfered with an activity protected under § 1981.   *See Barfield v. Commerce Bank, N.A.*, 484 F.3d 1276, 1278 (10th Cir. 2007).   Plaintiff has adequately alleged the first two

5

elements. The only question that remains is whether the alleged discrimination interfered with a protected activity, namely, the making or formation of a contract.

Precedent from the Court of Appeals for the Tenth Circuit dictates that this question must be answered in the negative. In *Barfield*, the Court of Appeals recognized that a customer who offers to do business in a retail store engages in conduct that pertains to the formation of a contractual relationship, which is protected activity under § 1981. *Id.* at 1278 (collecting cases). Other courts have held the same. *See Garrett v. Tandy Corp.*, 295 F.3d 94, 100 (1st Cir. 2002) (recognizing that, following the amendment expanding the meaning of the phrase "make and enforce contracts," § 1981 "applies to those situations in which a merchant, acting out of racial animus, impedes a customer's ability to enter into, or enjoy the benefits of, a contractual relationship"); *Clark v. Safeway, Inc.*, 478 F. Supp. 3d 1080, 1089-90 (D. Or. 2020) (collecting cases). But Plaintiff's Amended Complaint does not say, one way or the other, whether the Manager's conduct *impeded* her ability to purchase goods at Defendant's store, nor does it specify whether she was able to make her intended purchases despite the unpleasant circumstances. *See* Dkt. No. 12. This is crucial, as the Tenth Circuit has required plaintiffs to identify "the *actual loss* of a contract" to state a § 1981 claim. *Shawl v. Dillard's Inc.*, 17 F. App'x 908, 911-12 (10th Cir. 2001) (unpublished) (emphasis added) (holding that a plaintiff who chose to return to the store at a later date due to the rude conduct of the salesperson could not show an "actual contract loss" caused by the allegedly discriminatory behavior). Because Plaintiff has not alleged an actual contract loss, she cannot move forward with her claim under § 1981.

Finally, the Court concludes that it can, and should, decline to exercise jurisdiction over Plaintiff's state law claims for negligent and intentional infliction of emotional distress. *Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) (noting that,

"[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims"). The Court has dismissed the claims that appear to arise under federal law, and the facts alleged do not support the exercise of diversity jurisdiction.[4] Because there is no independent basis for jurisdiction over Plaintiff's remaining state-law claims, those claims should be pursued in the courts of the State of Oklahoma.

## CONCLUSION

For the reasons set forth herein, the Court holds that Plaintiff's Amended Complaint [Dkt. No. 12] fails to state a claim for relief under federal law, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims.

IT IS THEREFORE ORDERED that that Plaintiff's Motion to Dismiss [Dkt. No. 15] is GRANTED.

IT IS FURTHER ORDERED Plaintiff's Amended Complaint [Dkt. No. 12] is DISMISSED WITHOUT PREJUDICE.

Dated this 11th day of October 2023.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff alleges that Defendant is an Oklahoma company and does not appear to seek damages that exceed the jurisdictional limit. *See* Dkt. No. 12 at ¶ 2; *id.* at ¶ G (Prayer for Relief). There is therefore no apparent basis for exercising jurisdiction over this dispute under 28 U.S.C. § 1332.